1  MAHER, RENZI & MAHER
   Michael K. Maher, Esq. (SBN 064355)
2  4175 E. La Palma Ave #205
   Anaheim, CA 92807
3  (714) 986-1600
   (714) 998-6341  Direct
4  (714) 998-6961  Fax
   mmaher@maherlaw.com
5
   Attorneys for Defendant
6  TRIPOD TECHNOLOGY CORPORATION

7

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13  BAY SALES INC., a California corporation  )  Case No. C 07 03702 JW  (PVT)
                                              )
14            Plaintiff,                       )  **DECLARATION OF MICHAEL K.**
                                              )  **MAHER IN OPPOSITION TO**
15            v.                               )  **PLAINTIFF'S MOTION TO COMPEL**
                                              )  **DISCOVERY RESPONSES**
16  TRIPOD TECHNOLOGY CORPORATION,           )
17  a Taiwanese corporation and DOES 1 to 10  )  **[Memorandum of Points and Authorities in**
                                              )  **Opposition filed concurrently herewith]**
18            Defendants.                      )
                                              )  Date: July 22, 2008
19                                            )  Time: 10:00 a.m.
                                              )  Judge: Magistrate Trumbull
20                                            )  Courtroom: 5 (Fourth Floor)
                                              )
21                                            )
                                              )
22                                            )
                                              )
23                                            )  Complaint Filed: June 19,2007
                                              )  Trial Date:      None Set
24                                            )
                                              )
25                                            )
                                              )
26  _____)

27

28

                                    -1-

**DECLARATION OF MICHAEL K. MAHER IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL DISCOVERY RESPONSES
CASE NO. 07 03702 JW**

I, MICHAEL K. MAHER, declare:

1. I am an attorney licensed to practice law before all the courts of the State of California and am a member of the bar of this United States District Court. I am attorney of record for Defendant Tripod Technology Corporation in the above referenced action. I have personal knowledge of the facts set forth in this Declaration and, if called to do so, I could and would competently testify thereto under oath.

2. On January 30, 2008, Plaintiff Bay Sales Inc served, by mail, a set of written interrogatories and a set of requests for production of documents on Defendant Tripod Technology Corporation. ("Tripod"). The document request purported to incorporate a lengthy and burdensome set of "Definitions" which Plaintiff did not include in its moving papers but which are necessary to an understanding of Defendant's response. The preamble of the document request also failed to set forth any date or particulars for the production of the requested documents. A true and correct copy of this section of these sections of the document request is attached hereto as Exhibit A. The interrogatories also contained a definition section which was not included as part of the moving papers but which is attached hereto as Exhibit B.

3. Pursuant to the Federal Rules of Civil Procedure, defendant was required to respond to these discovery requests on or before March 3, 2008. On March 3, 2008, Defendant Tripod timely served its written responses to each of the above referenced discovery requests. Defendant's actual responses to each of the Requests for Production of Documents are incorporated verbatim as part of Appendix A of the moving papers. However, the moving papers do <u>not</u> include, incorporate or attach Tripod's actual responses to interrogatories 1, 2,3 or 4.Instead, what appears under the heading "Defendant's Response" in the Appendix is a short (and inaccurate) characterization of Defendant's actual response, not the response itself.

**DECLARATION OF MICHAEL K. MAHER IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**
**CASE NO. 07 03702 JW**

4. Although the discovery requests were objectionable in the particulars set forth in defendant's responses, defendant nonetheless voluntarily provided information and documents to plaintiff. On March 4, 2008, I sent plaintiff's counsel a letter enclosing a voluntary production of documents. Included among the documents produced was the Sales Representation Agreement between the parties, a true and correct copy of which is attached hereto as Exhibit C, and a schedule of commissions paid—produced and marked as document TID 33—a true and correct copy of which is attached hereto as Exhibit D. I also enclosed with my letter a CD on which had been loaded electronic copies of thousands of e-mails between the parties during the period of time they were in a business relationship with each other.

5. The parties do not dispute that the Sales Representation Agreement was entered into in June, 2002 (Complaint, Paragraph 11) and that it was terminated by Tripod in April, 2006 (Complaint, Paragraph 19). Nonetheless, Plaintiff's discovery requests asked for sales data for various later dates, long after the admitted termination date, including dates in late 2007. Defendant objected to the production of sales data beyond a reasonable time after the termination of the agreement. Tripod offered to provide sales data through December 31, 2006 in order to allow plaintiff to verify that all commissions had been paid on sales through the termination date (or the brief run out period set forth in the agreement), but objected to the production of data beyond that for sales which clearly were not part of the agreement between the parties, especially since there is no allegation in the complaint that there was any modification to, or extension of, the termination date.

6. After receiving Tripod's discovery responses, I heard nothing from plaintiff's counsel with respect to same for over one month. Then, in early April, 2008 I received a request from Bay Sales' attorneys to meet and confer or with respect to providing supplemental responses to some of the discovery requests in question. Over the course of the next few weeks, I engaged in

-3-

**DECLARATION OF MICHAEL K. MAHER IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**
**CASE NO. 07 03702 JW**

several meet and confer telephonic conferences to discuss the discovery issues raised by plaintiff. The focus of these discussions was primarily centered on the latest date for which Tripod should produce sales data. In our discussions, Bay Sales did not seek further responses to all, or even the majority, of their discovery requests. In fact, they made it clear that they were willing to forgo any attempts to compel responses to these particular discovery requests provided that we were able to reach agreement with respect to the production of sales data, or, failing agreement, to narrow the issue of the date to be used for resolution by the Court.

7. On April 29, 2008, after we had exchanged written proposals on resolving our discovery issues, and while our meet and confer discussions were still in process, Bay Sales filed a Motion to Compel Discovery Responses in this court and set same for hearing on June 3, 2008. ("Discovery Motion 1"). The filing of such a motion was unnecessary and premature. However, two days after the filing of this motion, the parties reached agreement with respect to the issues arising out of the discovery requests which were the subject of the motion. The parties memorialized their agreement by letter dated May 1, 2008 from Bay Sales' attorneys to the undersigned, a copy of which is attached hereto as Exhibit E, and a written Stipulation and Proposed Order which was filed on or about May 6, 2008 and which was entered as an Order pursuant to stipulation by Judge Ware on or about May 21, 2008. The Stipulation and Order is Document 26 of the docket in this case. The Stipulation specifically recites that the parties have "reached an agreement resolving the discovery dispute after Plaintiff Bay Sales filed its motion to compel". As a result of this resolution of Discovery Motion 1, plaintiff took the motion off calendar.

8. In Bay Sales' letter of May 1 (Exhibit E hereto), Tripod agreed to supplement its production of sales data through the end of 2006 for most accounts. Tripod also agreed that it would produce whatever documents it could find related to former Requests for Production

-4-

**DECLARATION OF MICHAEL K. MAHER IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**
**CASE NO. 07 03702 JW**

numbers 7 & 8 which had been modified by agreement of the parties to be limited to two specific issues known as the "UL labeling issue" and the "Dell pricing issue". In fact, on May 19 and May 23, 2008, Tripod produced further sales data and produced documents with respect to the UL labeling and Dell pricing issues. True and correct copies of my transmittal letters are attached hereto as Exhibit F. As set forth and agreed in the letter of May 1, 2008, Tripod provided sales data for the entities shown on its original schedule CID 33 through December 31, 2006, produced sales data for the companies listed in the Bay Sales spreadsheet through the same date and, finally, produced documents with respect to the UL labeling and Dell pricing issues. In so doing Tripod believed it had complied with the discovery agreement and that all issues related to the two discovery requests had been resolved and/or fulfilled.

9.    While Tripod was in the process of further responding as agreed, Bay Sales served deposition subpoenas on Dell, Motorola, Jabil. nVidia and SanDisk seeking sales information directly from those customers for dates beyond the termination date. As of the date of this declaration, declarant is informed and believes that plaintiff has received documents/sales data in response to some of those subpoenas and that others have been continued and/or are still pending. Plaintiff may have already received, therefore, much of the information which it seeks in this motion and has an alternative discovery device in place to receive further information in this regard as well.

10.    Tripod has advised Bay Sales that it intends to file a motion for summary judgment. The last day set by the court for the hearing of such a dispositive motion is August 18, 2008. Because discovery was ongoing and had not yet been completed, Tripod has deferred the filing of such a motion. As part of their discovery agreement, the parties agreed that, if Tripod's summary judgment motion was not on file by June 30, 2008, Bay Sales would be free to re-file its motion to compel to seek sales data after December 31, 2006. This was the only issue that the

-5-

**DECLARATION OF MICHAEL K. MAHER IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**
**CASE NO. 07 03702 JW**

parties left open in their agreement with respect to the prior discovery requests.

11.   Bay Sales did not wait until June 30, 2008 as agreed.  On June 17, 2008, almost two weeks before the agreed deadline, Bay Sales filed a two-page "motion", Document 29 in the docket of this action, which purports to renotice Discovery Motion 1 for hearing on July 15, 2008.

12.   After the premature filing of this renoticed motion, Plaintiff's counsel, John Fowler, contacted the undersigned telephonically and requested that the renoticed motion set for July 15 be moved to July 22, that he be permitted to serve a Supplemental Declaration, and that Tripod be allowed to file any opposition by July 3, 2008.  In requesting this stipulation from declarant, Mr. Fowler stated that his proposed supplemental declaration would confirm that the only issue remaining for resolution by the court was the issue of the outside date for the production of sales data. .Declarant agreed to stipulate to move the hearing date of the motion and executed a Stipulation to this effect which was filed in this action as Document 30. Declarant did not stipulate or agree that the renoticed motion was procedurally or substantively proper or in accordance with the agreement of the parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on July 3, 2008, at Anaheim, California.       .

Michael K. Maher
Attorneys for Defendant
TRIPOD TECHNOLOGY CORPORATION

-6-

**DECLARATION OF MICHAEL K. MAHER IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**
**CASE NO. 07 03702 JW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  A

1    John W. Fowler, Esq., Bar No. 037463
     jfowler@be-law.com
2    Donald P. Gagliardi, Bar No., 138979
     dgagliardi@be-law.com
3    BERGESON, LLP
     303 Almaden Boulevard, Suite 500
4    San Jose, CA 95110-2712
     Telephone: (408) 291-6200
5    Facsimile: (408) 297-6000

6    Attorneys for Plaintiff
     BAY SALES, INC.

7

8

9            UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11               SAN JOSE DIVISION

12

13    BAY SALES, INC., a California corporation,      Case No. C07-03702 JW

14                   Plaintiff,    **BAY SALES, INC.'S FIRST SET OF**
                                 **REQUESTS FOR PRODUCTION OF**
15       vs.                           **DOCUMENTS TO TRIPOD**
                                 **TECHNOLOGY CORP.**
16    TRIPOD TECHNOLOGY CORPORATION, a
     Taiwanese corporation and DOES 1 to 10,

17

18                Defendants.

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| **PROPOUNDING PARTY:** | **Plaintiff BAY SALES, INC.** |
| **RESPONDING PARTY:** | **Defendant TRIPOD TECHNOLOGY CORP.** |
| **SET NUMBER:** | **ONE (1)** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Bay Sales, Inc. ("BAY SALES") hereby demands that on (insert date), (insert time) at the offices of BAY SALES attorneys of record, Bergeson, LLP, located at 303 Almaden Blvd., Suite 500, San Jose, California 95110, defendant Tripod Technology Corporation ("TRIPOD") produce for inspection and photocopying the originals, or, if the originals are unavailable, copies of the documents and materials described in this First Set of Requests for Production, which documents and materials are in the possession, custody and control of TRIPOD or any of its present or former officers, directors, employees, agents, or representatives, including, but not limited to, its attorneys.

## DEFINITIONS

1.    "ANY" as used herein shall mean any and all.

2.    "DOCUMENT" or "DOCUMENTS" as used herein shall mean all handwritten, printed, graphic, typed, electronically recorded, sound recorded, or computer readable materials, or other recorded or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated, assimilated, or made in any form that is or was in YOUR actual or constructive possession, custody, or control, whether the original, draft, carbon, photographic, or other copy, reproduction, or facsimile thereof, including, but not limited to, any and all documents as that term is defined in Rule 34 of the Federal Rules of Civil Procedure, records, files, writings, letters, minutes, correspondence, advertisements, publications, mailgrams, telegrams, electronic mail, bulletins, instructions, resolutions, charts, literature, work assignments, reports, brochures, memoranda, notations of telephone or personal conversations or conferences, telephone messages, transcripts, price lists, contracts, agreements, checks, canceled checks, interoffice communications, calendars, daytimers, diaries, logs, notes, notebooks, ledgers, cards, drafts, microfilm, microfiche, circulars, pamphlets, studies, notices, summaries, reports, books, invoices, graphs, diagrams, photographs, data sheets, data compilations, computer data sheets, computer data compilations, computer disks, computer printouts, worksheets, records, statistics,

1  speeches, and any other writings, tapes, sound records, or data compilations from which

2  information can be obtained or can be translated through detection devices into reasonably useable

3  form, and any other document, recording, tangible thing, or photograph.  The term

4  "DOCUMENT(S)" shall also mean each copy which is not identical to the original, or to any other

5  identified copy, and all drafts and notes (whether typed, handwritten, or otherwise) made or

6  prepared in connection with such DOCUMENTS, whether used or not.

7      3.      "PERSON" or "PERSONS" as used herein shall mean and include natural persons,

8  governmental entities and agencies, proprietorships, partnerships, corporations, and all other forms

9  of organization or association.

10     4.      "YOU," "YOUR," or "TRIPOD" as used herein shall refer to defendant Tripod

11 Technology Corporation, and its past and present subsidiaries, divisions, affiliates, parents, agents,

12 predecessors, and successors in interest.

13     5.      "BAY SALES" as used herein shall refer to plaintiff Bay Sales, Inc., and its past

14 and present employees, agents, officers and directors of BAY SALES.

15     6.      "PCB" or "PCBs" as used herein shall refer to printed circuit boards manufactured,

16 distributed or sold by or on behalf of TRIPOD."

17     7.      "COMPANY" or "COMPANIES" as used herein shall refer to each of the

18 companies identified in paragraph 19 of the complaint namely (Delphi Automotive, Discera, Good

19 Technology, Hitachi / IBM, HP Fort Collins, HP Houston, IBM, Kyocera / QualComm, Lucent,

20 Plantronics, Research in Motion (RIM), Roche Diagnostics, Solectron USA & Europe, and

21 Trimble Navigation) and its past and present subsidiaries, divisions, affiliates, parents, suppliers,

22 contractors, contract manufacturers, original design manufacturer, agents, predecessors, and

23 successors in interest.

24     8.      "TERRITORY" or "TERRITORIES" as used herein shall refer to each of the Bay

25 Sales Territories identified in paragraph 21 of the complaint (SanDisk, nVidia, Dell, and Jabil

26 Worldwide), and its past and present subsidiaries, divisions, affiliates, parents, contractors,

27 contract manufacturers, original design manufacturers, suppliers, agents, licensees, design

28 licensees, predecessors, and successors in interest.

9.     "SALE' or "SALES" as used herein shall refer to transactions by which PCB's are transferred directly or indirectly to a COMPANY or TERRITORY.

10.     "AUTHOR" and "AUTHORS" as used herein shall mean any name listed in the document properties of a DOCUMENT on any computer.

11.     The singular shall be deemed to include the plural and vice-versa.

12.     The term "IDENTIFY" or "IDENTIFIED" as used herein shall mean to establish the identity of, and/or to ascertain the origin, nature, or definitive characteristics of.

13.     The term "IDENTIFY" as to PERSONS shall mean to provide: (a) the full name of the PERSON; (b) if a natural PERSON, the current (or last known) employer, telephone number, business address, and residence address; and (c) if a business, or fictitious entity, the current (or last known) address.

14.     The term "IDENTIFY" as to DOCUMENTS shall mean to provide: (a) the title, date, subject matter and AUTHOR of the DOCUMENT; and (b) whether the original or a copy of the DOCUMENT is in YOUR possession, custody, or control.

15.     The term "IDENTIFY" as to a SALE or SALES shall mean to provide: (a) the dates of each order, acknowledgment or acceptance; (b) the quantity of PCBs transferred; (c) the description of PCB including number of layers (i.e. 4L/6L/8L etc.) and type (i.e. PB17/P374 etc.); (d) the identity of each sender and successive recipient of the PCB's from the original manufacturer to the final manufacturer of the product incorporating the PCB; (e) the date, number, and amount of the invoice; (f) the price; (g) the Net Invoice Price as defined in the SRA; and (h) the date and amount of each payment to Tripod, or its banks, intermediaries, agents or assignees.

16.     The singular and masculine gender shall mean also the plural and feminine or neuter, as may be appropriate; the conjunctive includes the disjunctive, and the disjunctive includes the conjunctive; and "each," "any" or "all" includes each and every.

## INSTRUCTIONS

1.     When producing the DOCUMENTS, designate which DOCUMENTS are being produced in response to each of the following requests, and if a request contains sub-categories, designate which DOCUMENTS are being produced in response to each sub-category.

2.     If YOU withhold under claim of privilege DOCUMENTS which are responsive to this DOCUMENT request, please provide the following information as to each withheld DOCUMENT:

        (a)     The subject of the DOCUMENT;

        (b)     The title, heading, or caption of the DOCUMENT, if any;

        (c)     The identifying number(s), letter(s), or combination thereof, if any, and the significance or meaning of such number(s), letter(s) or combination thereof;

        (d)     The date appearing on the DOCUMENT, or if no date appears thereon, the date or approximate date on which the DOCUMENT was prepared;

        (e)     The general nature or description of the DOCUMENT (*i.e.*, whether it is a letter, memorandum, minutes of a meeting, etc.) and the number of pages of which it consists;

        (f)     The identity of the PERSON who signed the DOCUMENT, and, if it was not signed, the identity of each PERSON who prepared it;

        (g)     The identity of each PERSON to whom the DOCUMENT was addressed or sent, and the identity of each PERSON to whom a copy thereof was sent; and

        (h)     The identity of each PERSON who has custody of either the original or a copy of each such DOCUMENT.

3.     YOU are requested to produce all responsive DOCUMENTS in YOUR actual or constructive possession or under YOUR control or in the actual or constructive possession or control of YOUR attorneys, employees, or agents, which were created during, or which refer or relate, to the relevant time period of this request.

4.     A DOCUMENT shall be deemed to be in YOUR "control" if YOU have the right to secure the DOCUMENT or a copy thereof from another PERSON having possession or custody thereof.

1        5.    If a DOCUMENT is responsive to a request for production and is in YOUR

2    control, but is not in YOUR possession or custody, YOU are requested to identify the PERSON

3    with possession or custody.

4        6.    If ANY such DOCUMENT was at ANY time in YOUR possession, custody, or

5    control, but is no longer in such possession, custody, or control, state whether such DOCUMENT

6    is missing, lost, destroyed, discarded, or has been transferred, voluntarily or involuntarily, to ANY

7    other PERSON or otherwise disposed of; describe the circumstances surrounding, and

8    authorization given, if ANY, for such disposition; and identify the PERSON or PERSONS

9    responsible for such disposition and the PERSON or PERSONS to whom such DOCUMENT was

10   transferred, if ANY.

11       7.    All DOCUMENTS shall be produced in the order and in the manner that they were

12   or are kept in the ordinary course of business and shall be reproduced in their original file folders,

13   binders, or other covers or containers, unless that is not possible.  ANY DOCUMENTS which

14   must be removed from their original folders, binders, or covers or containers in order to be

15   produced shall be identified in a manner so as to clearly specify where such DOCUMENTS

16   originated.

17       8.    If a DOCUMENT cannot be produced in full, YOU are required to produce it to the

18   extent possible, and specify what is being withheld and the reason it is being withheld.

19       9.    The obligation to produce the DOCUMENTS requested herein is of a continuing

20   nature; if, at any time after compliance, YOU should acquire possession, custody, or control of

21   any additional DOCUMENTS coming within the scope of any of the individual categories of the

22   REQUEST, YOU are requested to furnish such DOCUMENTS to the attorneys for BAY

23   SALES.

## REQUESTS FOR PRODUCTION

25       1.    All DOCUMENTS referring or relating to BAY SALES, including all

26   communications to or from BAY SALES.

27       2.    All DOCUMENTS referring or relating to actual or prospective SALES of PCB's

28   by or authorized by TRIPOD from June 11, 2002 to December 31, 2008.

1
2
3
4
5
6
7

# EXHIBIT  B

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  John W. Fowler, Esq., Bar No. 037463
   jfowler@be-law.com
2  Donald P. Gagliardi, Bar No., 138979
   dgagliardi@be-law.com
3  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
4  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
5  Facsimile:  (408) 297-6000

6  Attorneys for Plaintiff
   BAY SALES, INC.

7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12

13  BAY SALES, INC., a California corporation,        Case No. C07-03702 JW

14                                    Plaintiff,      **BAY SALES, INC.'S WRITTEN
                                                      INTERROGATORIES TO TRIPOD
15          vs.                                       TECHNOLOGY CORP.**

16  TRIPOD TECHNOLOGY CORPORATION, a
    Taiwanese corporation and DOES 1 to 10,
17
                                    Defendants.
18

19

20

21

22

23

24

25

26

27

28

1    **PROPOUNDING PARTY:**        Plaintiff BAY SALES, INC.

2    **RESPONDING PARTY:**        Defendant TRIPOD TECHNOLOGY CORP.

3    **SET NUMBER:**              ONE (1)

4        Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Bay Sales, Inc.

5    ("BAY SALES") hereby propounds the following interrogatories to defendant Tripod Technology

6    Corporation ("TRIPOD"), and requests that TRIPOD answer separately, fully, under oath, and in

7    writing each and all of the following interrogatories in this First Set Of Interrogatories (the

8    "INTERROGATORIES").

9                                    **DEFINITIONS**

10       1.      "ANY" as used herein shall mean any and all.

11       2.      "DOCUMENT" or "DOCUMENTS" as used herein shall mean all handwritten,

12   printed, graphic, typed, electronically recorded, sound recorded, or computer readable materials,

13   or other recorded or graphic matter of every type and description, however and by whomever

14   prepared, produced, reproduced, disseminated, assimilated, or made in any form that is or was in

15   YOUR actual or constructive possession, custody, or control, whether the original, draft, carbon,

16   photographic, or other copy, reproduction, or facsimile thereof, including, but not limited to, any

17   and all documents as that term is defined in Rule 34 of the Federal Rules of Civil Procedure,

18   records, files, writings, letters, minutes, correspondence, advertisements, publications, mailgrams,

19   telegrams, electronic mail, bulletins, instructions, resolutions, charts, literature, work assignments,

20   reports, brochures, memoranda, notations of telephone or personal conversations or conferences,

21   telephone messages, transcripts, price lists, contracts, agreements, checks, canceled checks,

22   interoffice communications, calendars, daytimers, diaries, logs, notes, notebooks, ledgers, cards,

23   drafts, microfilm, microfiche, circulars, pamphlets, studies, notices, summaries, reports, books,

24   invoices, graphs, diagrams, photographs, data sheets, data compilations, computer data sheets,

25   computer data compilations, computer disks, computer printouts, worksheets, records, statistics,

26   speeches, and any other writings, tapes, sound records, or data compilations from which

27   information can be obtained or can be translated through detection devices into reasonably useable

28   form, and any other document, recording, tangible thing, or photograph.  The term

- 1 -

1  "DOCUMENT(S)" shall also mean each copy which is not identical to the original, or to any other

2  identified copy, and all drafts and notes (whether typed, handwritten, or otherwise) made or

3  prepared in connection with such DOCUMENTS, whether used or not.

4      3.     "PERSON" or "PERSONS" as used herein shall mean and include natural persons,

5  governmental entities and agencies, proprietorships, partnerships, corporations, and all other forms

6  of organization or association.

7      4.     "YOU," "YOUR," or "TRIPOD" as used herein shall refer to defendant Tripod

8  Technology Corporation, and its past and present subsidiaries, divisions, affiliates, parents, agents,

9  predecessors, and successors in interest.

10      5.     "BAY SALES" as used herein shall refer to plaintiff Bay Sales, Inc., and its past

11  and present employees, agents, officers and directors of BAY SALES.

12      6.     "PCB" or "PCBs" as used herein shall refer to printed circuit boards manufactured,

13  distributed  or sold by or on behalf of TRIPOD."

14      7.     "COMPANY" or "COMPANIES" as used herein shall refer to each of the

15  companies identified in paragraph 19 of the complaint namely (Delphi Automotive, Discera, Good

16  Technology, Hitachi / IBM, HP Fort Collins, HP Houston, IBM, Kyocera / QualComm, Lucent,

17  Plantronics, Research in Motion (RIM), Roche Diagnostics, Solectron USA & Europe, and

18  Trimble Navigation) and its past and present subsidiaries, divisions, affiliates, parents, suppliers,

19  contractors, contract manufactures, original design manufactures, agents, predecessors, and

20  successors in interest.

21      8.     "TERRITORY" or "TERRITORIES" as used herein shall refer to each of the Bay

22  Sales Territories identified in paragraph 21 of the complaint (SanDisk, nVidia, Dell, and Jabil

23  Worldwide), and its past and present subsidiaries, divisions, affiliates, parents, contractors,

24  contract manufactures, original design manufactures, suppliers, agents, licensees, design licensees,

25  predecessors, and successors in interest.

26      9.     "SALE' or "SALES" as used herein shall refer to transactions by which PCB's are

27  transferred directly or indirectly to a COMPANY or TERRITORY.

28

BAY SALES, INC.'S WRITTEN INTERROGATORIES TO TRIPOD TECHNOLOGY CORP.
Case No. C07-03702 JW

1    10.    "AUTHOR" and "AUTHORS" as used herein shall mean any name listed in the

2    document properties of a DOCUMENT on any computer.

3    11.    The singular shall be deemed to include the plural and vice-versa.

4    12.    The term "IDENTIFY" or "IDENTIFIED" as used herein shall mean to establish

5    the identity of, and/or to ascertain the origin, nature, or definitive characteristics of.

6    13.    The term "IDENTIFY" as to PERSONS shall mean to provide: (a) the full name of

7    the PERSON; (b) if a natural PERSON, the current (or last known) employer, telephone number,

8    business address, and residence address; and (c) if a business, or fictitious entity, the current (or

9    last known) address.

10    14.    The term "IDENTIFY" as to DOCUMENTS shall mean to provide: (a) the title,

11    date, subject matter and AUTHOR of the DOCUMENT; and (b) whether the original or a copy

12    of the DOCUMENT is in YOUR possession, custody, or control.

13    15.    The term "IDENTIFY" as to a SALE or SALES shall mean to provide: (a) the

14    dates of each order, acknowledgment or acceptance; (b) the quantity of PCBs transferred; (c) the

15    description of PCB including number of layers (i.e. 4L/6L/8L etc.) and type (i.e. PB17/P374

16    etc.); (d) the identity of each sender and successive recipient of the PCB's from the original

17    manufacturer to the final manufacturer of the product incorporating the PCB; (e) the date,

18    number, and amount of the invoice; (f) the price; (g) the Net Invoice Price as defined in the SRA;

19    and (h) the date and amount of each payment to Tripod, or its banks, intermediaries, agents or

20    assignees.

21    16.    The singular and masculine gender shall mean also the plural and feminine or

22    neuter, as may be appropriate; the conjunctive includes the disjunctive, and the disjunctive

23    includes the conjunctive; and "each," "any" or "all" includes each and every.

## INTERROGATORIES

25    1.    IDENTIFY each SALE of PCB's to each of the COMPANIES from June 11, 2002

26    through January 30, 2007.

27    2.    IDENTIFY each SALE of PCB's to each of the TERRITORIES from June 11,

28    2002 through December 31, 2007.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  C

EXHIBIT C

CONFIDENTIAL

## SALES REPRESENTATION AGREEMENT

This agreement made this 11 day of June, 2002 by and between Bay Sales Inc.,
a California corporation having its principal offices located at 394 Martin Ave. Santa
Clara, CA 95050 herein referred to as the "Representative" and Tripod Technology
Corporation having its principal office at No. 21 Kung-Yeh 5th Road, Ping-Jen Indusrtial
Park, Taoyuan Hsien, Taiwan ROC, herein referred to as the "Manufacturer".

## 1) APPOINTMENT AND ACCEPTANCE

Manufacturer appoints Representative as its NON EXCLUSIVE selling
representative to sell the product enumerated in section 3 hereof in the
territory defined in section 2 hereof and Representative accepts the
appointment and agrees to sell and promote the sale of the product of
Manufacturer to the priority of all other similar products manufactured by
other companies.

## 2) TERRITORY

Representative's territory shall consist of the following:

a) A company/customer which is authorized in writing by the
Manufacturer for the Representative to sell to, and which places a
purchase order, which is accepted by the Manufacturer, is deemed
and considered to be the Representative's "territory" according to
the terms and conditions of this agreement. It is the sole authority
of the Manufacturer to grant territories. A detailed description of
the representative's territory can be included as an addendum to
this agreement, by Manufacturer, if agreed upon in writing by
both parties. When the Manufacturer grants a company/customer
with multiple divisions to a Representative, it is granted only for
the division from which the purchase order is accepted.

b) Upon of assigned of territories by the manufacturer, the
representative is required to update status at least once every
month for those territories that do not have any activity within 6
months. Manufacturer reserves the right to terminate such
assigned territories from Representative.

CONFIDENTIAL

3) PRODUCT-Printed Circuit Boards

## SALES REPRESENTATION AGREEMENT

4) AMOUNT OF COMPENSATION - 5% of Net Invoice or subject to be negotiated

5) COMPUTATION AND PAYMENT OF COMMISSIONS

a) Based on collections on invoices pertaining to Representative's orders, commissions are due and payable on payment in full on "Net Invoice Price" within Fifteen (15) days following the close of the month during which Manufacturer received remittance for such invoices.

b) Manufacturer will send Representative copies of internal sales order and invoices weekly. Representative will on a timely basis forward copies of any information received from the Customer to Manufacturer.

c) At the time of commission payment to Representative, Manufacturer will provide Representative a commission statement documenting invoice numbers for which the commissions are paid on that statement.

d) "Net Invoice Price" shall mean the total price at which an order is invoiced to the customer including any increase of decrease in the total amount of the order, but excluding charges for shipping and mailing costs, taxes, insurance, tooling, set-up, testing, electrical test fixtures, photo plotting, panelization, tooling software, photo, and any allowances or discounts granted to the customer by the Manufacturer. Representative may not combine tooling or above charges into board or unit prices.

CONFIDENTIAL

    e) "Order" shall mean any purchase order/commitment to purchase Manufacturer's product that is generated from within Representative's territory, as defined herein.

### SALES REPRESENTATION AGREEMENT

    f) Upon written notification, Manufacturer shall make shipping, invoice, and receivable records of Representative's accounts available for examination by the Representative, on a timely basis.

    g) Payment of Commissions

        1. Commissions are earned when payment from company/customer is received by Manufacturer.

        2. All payments received shall first be applied as specified by Customer's remittance advice unless older invoices are skipped or disregarded and should be applied differently per the Manufacturer's determination.

## 6. ACCEPTANCE OF ORDERS

All orders are subject to acceptance or rejection by an authorized employee of Manufacturer at its home office and to the approval of the Manufacturer's credit department. Manufacturer shall be responsible for all credit risks and collections; however, it is expected that Representative will take any and all reasonable action necessary to expedite payment of overdue accounts located in the Representative's territory. If Manufacturer notifies customer of it's acceptance or rejection of an order, a copy of any written notification shall be sent to the representative.

## 7. TERMS OF SALE

All sales shall be based upon terms and at prices established by Manufacturer and Manufacturer shall have the right, at its sole discretion, to establish, change, alter, or amend prices and other terms and conditions of sale. Representative shall not accept order in the name of Manufacturer, make price quotations or delivery promises without prior approval of Manufacturer.

CONFIDENTIAL

## SALES REPRESENTATION AGREEMENT

### 8. REPRESENTATIVE'S RELATIONSHIP AND BUSINESS CONDUCT

a) Representative shall use its best efforts and devote such time as may be reasonable necessary to sell and promote the sale of Manufacturer's product within the territory. Representative agrees that they will have ongoing activities and resources committed to generate new business and customers.

b) Representative will conduct all of its business in its own name and in such a manner as it may see fit. Representative will pay all expense of its office and activities and be responsible for the acts and expenses of its employees.

c) Representative shall not, without written approval from Manufacturer, alter, enlarge, or limit orders, make representations or guarantees concerning the products and services of Manufacturer, or accept the return of, make allowances, or offer discounts for such products.

d) Representative shall provide Manufacturer with information regarding customer to ensure effective service of accounts as agreed by both parties. Other reasonable information may be supplied by Representative, or as requested by Manufacturer.

e) Representative shall abide by Manufacturer's sales policies and shall communicate the same to manufacturer's customers. Representative will comply with all Federal and State laws in the conduct of all business relations with Manufacturer and mutual prospects and customers.

f) Manufacturer shall furnish Representative, at no expense to the Representative, samples, catalogues, literature, and any other

CONFIDENTIAL

material necessary for the proper promotion and sale of its product. Any literature, samples or other equipment or materials belonging to Manufacturer, which is not used, shall be

## SALES REPRESENTATION AGREEMENT

returned to Manufacturer upon request. The Representative shall not disclose any trade secrets, processes, inventions, or operational procedures revealed by the Manufacturer, during the term of this agreement, nor any time thereafter.

g) Representative will obtain copies of and forward to Manufacturer current bid abstracts, previous pricing histories, request for quotes and proposals, invitations to bid, and attend bidder conferences that may come within the scope of the Manufacturer's capabilities. Representative will obtain necessary clarifications of bids by providing data, specifications, drawing, and packaging and transportation information as required.

h) Representative must be available in a timely manner and at reasonable times to Represent the Manufacturer in the resolution of management, administrative, quality or technical problems or issues that might arise in connection with procurement.

## 9) TERM OF AGREEMENT AND TERMINATION

This agreement shall be effective on the date contained herein and shall remain in force unless terminated by either party in writing, by fax, or email, at any time from the signing of the agreement. In addition, registered or certified mail may be used. Termination date is the date fax or email is sent or notice mailed.

## 10) RIGHTS UPON TERMINATIONS

Upon termination of this agreement Representative shall be entitled to commissions on all payments received by Manufacturer from

CONFIDENTIAL

company/customers, (on purchase orders placed up to 30 (thirty) days following the termination date), for a period of 120 (one hundred twenty)

## SALES REPRESENTATION AGREEMENT

days after the termination date. Termination date is the date fax or email is sent or notice is mailed. Date of fax, email, or certified or registered mail sent, will be assumed as the date of receipt.

11)    GENERAL

This agreement contains the entire understanding of the parties, shall supersede any other oral or written agreements, and shall be binding upon and inure to the benefit of the party's approved successors and assigns. It may not be modified in any way without written consent of both parties. Representative shall not have the right to assign this Agreement in whole or part without Manufacturer's prior written consent. If any term, covenant, condition or provision of the agreement, or the application thereof to any person or circumstance, shall to any extent, be held by a court of competent jurisdiction, to be invalid, void or unenforceable, the remainder of the terms, covenants, conditions or provisions of this agreement, or the application thereof to any person or circumstance, shall remain in full force and effect and shall, in no way, be affected, impaired or invalidated.

12)    CONSTRUCTION OF AGREEMENT

This agreement and all remedies contained herein shall be construed according to the laws of the State of California, USA

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written in multiple counterparts, each of which shall be considered an original.

CONFIDENTIAL

## SALES REPRESENTATION AGREEMENT

MANUFACTURER: Tripod Technology Corp.

BY: _LEO CHIANG_____
    Signed

BY: _LEO CHIANG_____    _EVP._____
    Name Printed                  Title


Representative: Bay Sales Inc.

BY: _Katherine B Aghassi_____
    Signed

BY: _KATHERINE G. AGHASSI_____    _VP._____
    Name Printed                  Title

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  D

| Email Date (Bay Sales) | Invoice Date | Accounts | Amount | File Name | |
|---|---|---|---|---|---|
| 12/07/05 | 11/02/05 | Nvidia | $666.25 | Tripod (Oct-2005).xls | |
| 12/07/05 | 11/02/05 | Flextronics | $41,413.40 | Tripod (Oct-2005).xls | |
| 12/07/05 | 11/02/05 | Foxconn | $4,781.58 | Tripod (Oct-2005).xls | |
| 01/19/06 | 01/18/06 | Foxconn | $24,204.23 | COMM 20060118.xls | |
| 02/08/06 | 02/07/06 | Nvidia | $2,193.02 | Tripod (Jan-2006) _____.xls | |
| 02/08/06 | 02/07/06 | Flextronics | $989.47 | Tripod (Jan-2006) _____.xls | |
| 02/08/06 | 02/07/06 | Foxconn | $751.85 | Tripod (Jan-2006) _____.xls | |
| 02/16/06 | 01/09/06 | Nvidia | $1,419.75 | Tripod (Dec-2005) _____.xls | |
| 02/16/06 | 01/09/06 | Foxconn | $4,946.52 | Tripod (Dec-2005) _____.xls | |
| 03/22/06 | 03/20/06 | Foxconn | $10,137.71 | March 06 #032006.PDF | |
| 04/04/06 | 03/15/06 | Nvidia | $1,659.73 | Tripod (Feb-2006) _____.xls | |
| 04/04/06 | 03/15/06 | Flextronics | $2,843.70 | Tripod (Feb-2006) _____.xls | |
| 04/04/06 | 03/15/06 | Foxconn | $13,248.10 | Tripod (Feb-2006) _____.xls | |
| 04/04/06 | 03/08/06 | Asus | $14,732.82 | COMM 20060308.xls | |
| 04/04/06 | 03/15/06 | Foxconn | $10,137.71 | COMM 20060315.xls | |
| 04/04/06 | 03/15/06 | Sandisk | $956.91 | COMM 20060315 SANDISK.xls | |
| 04/15/06 | 04/12/06 | Foxconn | $420.44 | COMM 20060412 FOXCONN.xls | |
| 04/18/06 | 04/10/06 | Mitac | $3,600.35 | COMM 20060410 MITAC.xls | |
| 04/19/06 | 04/18/06 | Mitac | $3,600.35 | Commissions April 18 2006.PDF | |
| 05/09/06 | 05/06/05 | Asus | $20,950.87 | Invoice 050806-1.PDF | |
| 05/20/06 | 04/26/06 | Dell | $4,342.05 | COMM 20060426.xls | |
| 05/20/06 | 05/13/06 | Dell | $8,509.88 | COMM 20060513.xls | |
| 05/20/06 | 05/13/06 | Sandisk | $912.10 | COMM 20060513 SANDISK.xls | |
| 05/26/06 | 05/25/06 | Nvidia | $955.37 | May 06 Inv # 051506.PDF | |
| 05/26/06 | 05/25/06 | Foxconn | $379.43 | May 06 Inv # 051506.PDF | |
| 05/26/06 | 05/25/06 | Flextronics | $1,380.60 | May 06 Inv # 051506.PDF | |
| 06/06/06 | 05/19/06 | Sandisk | $912.10 | Invoice.pdf | |
| 06/06/06 | 05/19/06 | DGPM | $4,342.05 | Invoice.pdf | |
| 06/15/06 | 05/29/06 | Asus | $13,899.12 | COMM 20060529.xls | |
| 06/15/06 | 06/09/06 | Mitac | $8,462.48 | COMM 20060609.xls | |
| 06/21/06 | 06/20/06 | Foxconn | $30,367.85 | June 06 Inv # 061906.PDF | |
| 06/21/06 | 06/20/06 | Nvidia | $934.10 | June 06 Inv # 061906.PDF | |
| 07/05/06 | 06/19/06 | Nvidia | $702.10 | Tripod (May-2006) _____.xls | |
| 07/05/06 | 06/19/06 | Foxconn | $30,367.85 | Tripod (May-2006) _____.xls | |
| 07/07/06 | 06/14/06 | Asus | $13,899.12 | June 06 Inv # 061406.PDF | |
| 07/07/06 | 06/14/06 | DGPM | $8,462.48 | June 06 Inv # 061406.PDF | |
| 07/12/06 | 06/23/06 | Sandisk | $4,176.40 | Commission Inv.PDF | |
| 07/12/06 | 06/23/06 | Foxconn | $30,367.85 | Commission Inv.PDF | |
| 07/19/06 | 07/18/06 | Mitac | $54,387.84 | DGPM jul.06.PDF | |
| 07/19/06 | 07/18/06 | Foxconn | $5,258.42 | foxconn jul.06.PDF | |
| 07/26/06 | 07/26/06 | Nvidia | $1,098.93 | nvidia0706.PDF | |
| 08/29/06 | 08/28/06 | Foxconn | $2,063.94 | 082806.PDF | |
| 08/29/06 | 08/28/06 | Flextronics | $1,315.72 | 082806.PDF | |
| 08/30/06 | 08/24/06 | Dell | $49,060.59 | 082406-DELL.PDF | |

TID 33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  E

BERGESON, LLP
ATTORNEYS AT LAW
303 ALMADEN BOULEVARD, SUITE 500
SAN JOSE, CALIFORNIA 95110
TELEPHONE (408) 291-6200
FACSIMILE (408) 297-6000
WWW.BE-LAW.COM

May 1, 2008

**VIA E-MAIL AND U.S. MAIL**

Michael K. Maher
Maher, Renzi, & Maher
4175 E. La Palma Ave., Ste. 205
Anaheim, CA 92807

Re:  Bay Sales v. Tripod Technology Corporation
Santa Clara Sup. Court Case No. 107 CV 088218

Dear Mr. Maher:

This will confirm the parties' agreement regarding our discovery dispute.  The agreement is conditioned upon the Court's extending deadlines.

1.    (a) Tripod will supplement TID 33 in order to extend the sales data set forth for all entities shown there through December 31, 2006;  (b) Tripod will produce sales data for the companies listed in the spreadsheet attached to Bay Sales' e-mail/fax of April 17, 2008  through either 120 days after your stated reservation end date or 12/31/06, whichever is earlier; (c) Subject to, and without waiving your right to pursue further responses to your requests for production #7 and 8, Tripod will further respond to those requests as if they were modified to request the production of documents related to the UL labeling and Dell pricing disclosure issues from June 1, 2005 through June 1, 2006; (d) All of the above will be provided by Tripod  no later than May 19, 2008.

2.    Bay Sales will reserve its right to seek sales data after 12/31/06 but agree that it will not seek same from defendant Tripod prior to the motion cutoff date in this matter provided that Tripod file any dispositive motion no later than June 30, 2008.  If Tripod has not filed a dispositive motion by this date, Bay Sales is free to pursue discovery of sales data after December 31, 2006 from Tripod in any manner its sees fit, including re-filing its motion to compel.  The discovery cutoff and damages expert disclosures shall be extended to allow Bay Sales to seek such discovery after the dispositive motion cutoff date and prior to the Pre Trial Conference and to allow the parties' experts to review such additional data and/or modify their reports.

3.    Either party shall have the right to take the deposition of any witness that the other has listed in its Initial Disclosures, or which it may subsequently list in any amendment thereto, as well as a person most knowledgeable of the other party upon the following conditions: the party desiring to take the deposition shall give at least two calendar weeks notice of the intent to

Bergeson, LLP

Michael K. Maher Esq.
May 1, 2008
Page 2

take the deposition; the parties shall meet and confer in an attempt to agree on a specific date for
the deposition; the depositions shall be taken at your offices in San Jose; in the case of any
Tripod witness who is not a resident of California, the deponent shall be presented, prior to the
commencement of the deposition in conjunction with its scheduling, a check for the cost of a
nonrestricted coach (Y) class non stop round trip ticket from the international airport closest to
the witness' residence to SFO as determined at the time of scheduling the deposition, plus the
cost of 2 nights lodging as determined at the time of scheduling the deposition for a hotel within
ten minutes walking distance of Bergeson, LLP's office, plus $200 for meals and incidental
expenses; in the case of any Tripod witness who does not reside in California and who is listed in
the Initial Disclosures, or any amendment thereto, Tripod may, at its option, after receipt of
notice from Bay Sales that it intends to take a deposition of such person, declare that such
witness will not testify at trial, in which case the deposition of that person shall not go forward;
in the case of any Tripod witness who does not reside in California and who is listed in the Initial
Disclosures, or any amendment thereto, Bay Sales may, at its option, notify Tripod that it does
not intend to depose such person before the discovery cutoff but that it reserves the right to take
such person's deposition before trial if Tripod intends to call such person as a witness at trial. In
such event, Tripod shall advise Bay Sales that it intends to call such person as a witness no later
than 2 weeks before the Pre Trial Conference and the witness shall be deposed at a mutually
agreed date prior to the Pre Trial Conference in this matter; in the case of any Tripod witness who
does not reside in California and whose deposition is requested in the next 2 months, the parties
shall use their best efforts to schedule same in the same week as the court ordered mediation.

    4.    Bay Sales shall, no later than September 19, 2008, either modify its expert report
in light of the further production or advise Tripod that it elects to stand on the expert report as
originally submitted. Tripod shall have 1 week thereafter to designate a rebuttal expert and
provide the required expert report. No depositions of expert witnesses shall take place until this
process is completed.

    5.    The discovery cutoff shall be extended to July 31, 2008 for all purposes and later
as necessary to accommodate the foregoing agreements.

    The agreement above is subject to Court approval of moving the discovery dates and
other deadlines.

    Thank you very much for your courtesy and cooperation. Please contact me immediately
if this does not accurately reflect our agreement.

Very truly yours,

Colin G. McCarthy

CGM:vr

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT  F

# MAHER, RENZI & MAHER

MICHAEL K. MAHER
SHARON M. RENZI
CYNTHIA R. MAHER
DIANE M. JONES

An Association Including Professional Corporations
Attorneys At Law
4175 E. La Palma Ave., Suite 205
Anaheim, CA 92807
Telephone: (714) 986-1600
Facsimile:   (714) 998-6961

Direct Line: (714) 998-6341

May 19, 2008

## VIA FACSIMILE AND E-MAIL

Colin G. McCarthy Esq.
Bergeson LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110

Re:  Bay Sales v. Tripod Technology Corporation
Santa Clara Sup. Court Case No. 107 CV 088218

Dear Mr. McCarthy:

Pursuant to our agreement re discovery, the following files are enclosed with the electronic version of this letter:

1.    An Excel spreadsheet showing the applicable sales data for companies referenced in your e-mail/fax of April 17, 2008.This data is broken down into two time frames.

In the case of those entities which were listed on the "reservation sheet" attached to the sales representation agreement between the parties, all of which had termination dates in early 2004, we have provided sales data through the end of 2004. This encompasses a time frame beyond the 120 days after the end of the reservation period, which our agreement required, but, since the sales number turned out to be zero for the entire year 2004 for those entities, we have voluntarily extended the reporting date as a courtesy. Accordingly, the spreadsheet shows "N/A" for time periods after 2004 for these expired reserved entities to signify that such time frames are beyond the scope of our discovery agreement.

In the remainder of cases, sales data is provided through the end of December, 2006 as agreed.

2.    Documents related to what you have referred to as the UL labeling issue.

Colin G. McCarthy Esq.
May 19, 2008
Page 2

    3.    Documents related to what you have referred to as the Dell Non Disclosure Agreement/ Confidentiality issue.

    If you have any difficulty opening any of the above attachments, please advise. I will mail hardcopies of the documents to you with document ID numbers.

    My client has almost completed the process of compiling a single spreadsheet with sales data related to Dell, nVidia and SanDisk through the end of 2006 which will both supplement and effectively replace the information in TID 33. This revised spreadsheet will extract the sales data from the files referenced in TID 33 and combine it with sales data through the end of 2006. As you may have noticed, TID 33 turns out to be a compilation of commissions paid to Bay Sales, not a listing of sales. So, if we were literally to bring down TID 33 to 12/31/06, as we discussed, there would be no new data since there were no commissions paid after the last date shown on TID 33. Further, and more problematically, in many cases TID 33 references the contract manufacturer (e.g. Flextronics) for an OEM account that may be covered under the sales agreement, not the OEM itself. In some cases, these contract manufacturers did work for more than one of the three OEM entities which you are primarily focused on. So, it was necessary to drill down and be sure the sales in question relate to the Dell, nVidia and/or San Disk accounts that were potentially covered by the sales agreement. I have been advised that the revised spreadsheet will be available within the next two days. As soon as I receive it, I will forward it to you.

    All of the documents being produced with this letter are "Confidential" and subject to the Protective Order entered in this litigation.

    If you have any questions or concerns with respect to the foregoing, please contact me.

                Very truly yours,

                Michael K. Maher

MKM/.

# MAHER, RENZI & MAHER

MICHAEL K. MAHER
SHARON M. RENZI
CYNTHIA R. MAHER
DIANE M. JONES

An Association Including Professional Corporations
Attorneys At Law
4175 E. La Palma Ave., Suite 205
Anaheim, CA 92807
Telephone: (714) 986-1600
Facsimile:   (714) 998-6961

Direct Line: (714) 998-6341

May 23, 2008

## VIA FACSIMILE AND E-MAIL

Colin G. McCarthy Esq.
Bergeson LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110

Re:  Bay Sales v. Tripod Technology Corporation
Santa Clara Sup. Court Case No. 107 CV 088218

Dear Mr. McCarthy:

Pursuant to our agreement re discovery, the following file is enclosed with the electronic version of this letter:

1.   An Excel spreadsheet showing Tripod's shipment data, valued in dollars, through 12/31/06 for nVidia, SanDisk and the Dell Desktop program. This document is "Confidential" and subject to the Protective Order entered in this litigation. If you have any difficulty opening the spreadsheet, please advise. I will mail hardcopies of the documents to you with document ID numbers.

With the transmission of this document, I believe we have complied with our portion of the discovery agreement between us with respect to the further production of sales information and other documents.

If you have any questions or concerns with respect to the foregoing, please contact me.

Very truly yours,

Michael K. Maher

MKM/